No. 95-1613

Merlin C. Long,                         *
                                        *
            Appellant,                  *
                                        *  Appeal from the United States
       v.                               *  District Court for the
                                        *  Southern District of Iowa.
Crispus C. Nix; Sally Chandler-         *
Halford, as Director of the             *
Iowa Department of Corrections;         *
Thomas Hundley, Warden of ISP;          *
Paul W. Grossheim; Paul W.              *
Loeffelholz;                            *
                                        *
            Appellees.                  *


Submitted:  February 23, 1996

Filed:  _____

Before BOWMAN, LOKEN, and HANSEN, Circuit Judges.

BOWMAN, Circuit Judge.


    Merlin C. Long is serving a life sentence at the Iowa State Penitentiary (ISP) for the brutal murder of a woman. See Long v. Brewer, 253 N.W.2d 549, 551 (Iowa 1977). He filed this 42 U.S.C. § 1983 (1994) lawsuit against officials of the Iowa Department of Corrections seeking, among other things, treatment for a gender-identity disorder and damages for the defendants' alleged deliberate indifference to his gender-identity disorder. Based on the evidence introduced during a one-day bench trial, the District

Court[1] held that (1) the extent of Long's gender-identity disorder does not constitute a serious medical need, (2) even if Long has a serious medical need, the defendants were not deliberately indifferent to that need, and (3) the defendants were entitled to qualified immunity from Long's claim for damages. Long v. Nix, 877 F. Supp. 1358, 1365-67 (S.D. Iowa 1995). Long timely appeals from the judgment of the District Court, and we affirm.

I.

Long began his stay at ISP in 1964. He arrived in full drag, but initially prison officials refused to let him wear women's clothes. Following a hunger strike that began shortly after his arrival, Long was allowed to wear women's clothes and make-up on a regular basis. This privilege, however, was revoked in 1981 after a member of the Iowa Parole Board complained to prison officials about Long's attire. Since 1981 Long repeatedly has sought permission to wear women's clothing and make-up. ISP officials have denied his request each time. He also has requested hormone therapy and sex-change surgery. Aside from these requests, however, Long has not sought, nor have prison health services employees ordered, any treatment for a gender-identity disorder. In fact, Long has repeatedly refused to cooperate with prison psychologists and psychiatrists over the past twenty years. See Long, 877 F. Supp. at 1362; see also Program Review Committee Pre-Parole Evaluation (Feb. 3, 1978); Psychiatric Consultation (Apr. 24, 1981); Psychiatric Evaluation (Feb. 15, 1986).

As the District Court found, Long's 1990 evaluation was unproductive because Long presented himself in a "hostile and belligerent," "verbally abusive and abrasive manner." Long, 877

_____

[1]The Honorable Celeste F. Bremer, United States Magistrate Judge for the Southern District of Iowa. The case was tried before Magistrate Judge Bremer by consent of the parties pursuant to 28 U.S.C. § 636(c) (1994).

F. Supp. at 1362. During his 1991 psychological evaluation, all Long requested was "what he deserves": a transfer from ISP to a less structured setting. Id. The psychologist concluded that "[a]t this point in time there are no psychological or psychiatric issues that need to be addressed." Psychological Evaluation (Jan. 30, 1991). In 1992, Long "indicated no mental health issues or problems," and the psychologist concluded that there were no psychological issues that needed to be addressed. Psychological Evaluation (Jan. 29, 1992). In 1993, Long refused to participate in a psychological interview and "no meaningful psychological report" was submitted. Long, 877 F. Supp. at 1362. In contrast to Long's behavior, the record shows that prison officials have been responsive to Long's requests for treatment when they were reasonable. In 1982, for example, Long requested "treatment and evaluation" at the Iowa State Medical Facility (ISMF). ISMF Referral (Feb. 12, 1982). His request was granted, and he was transferred to ISMF. Later that same year he was transferred at his own request to a Missouri maximum security prison where he was allowed to wear women's clothing at all times. In 1986 he returned to ISP. His complaints to a member of the medical staff at that time "center[ed] around the fact that he will not be allowed to have the numerous articles of female clothing which he owns." Psychiatric Evaluation (Feb. 15, 1986). Long, however, never has shown a continued interest in psychiatric evaluation or treatment either for depression or his gender-identity disorder. "In 1994, Long [again] declined to be interviewed for his annual psychological evaluation. Long explained that he is apprehensive about meeting with ISP staff members because they are unsympathetic and because he thinks it is unlikely that he will be paroled." Long, 877 F. Supp. at 1362.

At trial, Dr. Walter O. Bockting, Ph.D., testified that Long has developed an intense gender dysphoria. His report diagnosed Long as suffering from a gender-identity disorder not otherwise specified, a sexual disorder not otherwise specified, and an

-3-

antisocial-personality disorder. Dr. Bockting concluded that Long has other emotional problems in addition to his gender-identity disorder, stating that tests indicated that Long "may be demanding, rebellious, hostile, aggressive, antisocial, impulsive, exhibitionistic, and promiscuous." Id. Dr. Bockting suggested that these traits result from the dysfunctional family setting in which Long was raised. Id.

Several of the psychologists and psychiatrists that had worked with Long at ISP also testified at trial. The state's principal expert witness was Dr. Paul W. Loeffelholz, M.D. For the most part, Dr. Loeffelholz did not disagree with Dr. Bockting's diagnoses. As the District Court noted, however, the diagnoses were in conflict on some points. See id. at 1365-66. The main disagreement between the experts was whether Long's gender-identity disorder is his predominate psychiatric condition. Dr. Bockting stated that Long's primary psychiatric condition is his gender-identity disorder. Dr. Loeffelholz testified that Long's gender-identity disorder is intermittent and generally exhibited when Long is under stress, while his "primary psychological problem is his serious antisocial and manipulative behavior." Id. at 1363. At bottom, the difference in diagnoses turns on whether Long primarily wants to wear women's clothing to achieve sexual arousal or to satisfy his desire to be a woman.

Despite his opinion that Long's gender-identity disorder is Long's principal condition, Dr. Bockting admitted that he believes that Long wears women's clothing both to express his feminine identity and for sexual stimulation. Dr. Bockting concluded that, because Long experiences some arousal, he suffers in part from paraphilia (a sexual attraction to an unusual subject or object) and transvestic fetishism (sexual arousal from cross-dressing). As a result, Dr. Bockting stated that Long "does not meet the minimal requirements that would make him eligible" for hormone therapy or

-4-

sex-change surgery.  Id. at 1362.  The experts thus agreed that Long is not a transsexual.

In contradistinction to their general agreement on the diagnosis, the experts flatly disagreed about the appropriate treatment for Long's condition.  Dr. Bockting recommended psychotherapy for Long's gender-identity disorder combined with tranquilizers for the depression and anxiety that has resulted from his inability to wear women's clothes.  If the tranquilizers prove to be ineffective, Dr. Bockting recommended that Long be given limited opportunities to wear women's clothes to relieve his anxiety.  Dr. Loeffelholz disagreed and noted that Long has not requested treatment for his anxiety or depression nor has he fully cooperated with prison psychologists so that the staff could properly respond to his anxiety or depression, let alone his gender-identity disorder.

The District Court found that Dr. Loeffelholz had refused to prescribe tranquilizers "[i]n spite of Dr. Bockting's recommendation."  Id. at 1363.  The District Court nonetheless found that Dr. Loeffelholz's refusal was based on a difference in professional judgment.  Id. at 1363, 1366.  As a result, the court concluded that "[Dr.] Loeffelholz did not act with deliberate indifference to Long's allegedly serious medical need" and that the other defendants "were justified in relying on the opinions of medical staff."  Id.

II.

Long argues, among other things, that the District Court erred when it held that his gender-identity disorder does not constitute a serious medical need and that the defendants were not

-5-

deliberately indifferent to his gender-identity disorder.[2]  Furthermore, Long argues that both the District Court's findings of fact and its conclusions of law are subject to de novo review "in light of the societal values underlying the relevant legal concepts."  Appellant's Brief at 2 (citing Falls v. Nesbitt, 966 F.2d 375, 377 (8th Cir. 1992)).  We first address the standard of review.

A.

In Nesbitt, we stated that "[m]ixed questions of law and fact that require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles are reviewable de novo."  Id.  While we believe that the term "mixed question of law and fact" is confusing and best discarded, Nesbitt cannot be read to permit the de novo review of the factual findings of a district court.  First, in Nesbitt, the "operative facts" were "not in dispute."  Id. at 376.  Second, we began our discussion of the standard of review by stating that "[t]he trial judge's findings of fact will not be set aside unless they are found to be `clearly erroneous.'"  Id. at 377 (quoting Fed. R. Civ. P. 52(a)).  The language cited by Long thus stands for the unremarkable proposition that a legal conclusion drawn from established facts is subject to de novo review.  Despite Long's invitation, we decline to subject the District Court's findings of fact in this case to de novo review.  As usual, we review the factual findings of the District Court for clear error and its legal conclusions de novo.  See, e.g., Little Rock School Dist. v. Pulaski County Special School Dist., #1, Nos. 95-1481 & 95-1482, slip op. at 8 (8th Cir. May 15, 1996); Williams v. Carter, 76 F.3d

---

[2]Because we agree with the District Court's conclusion that the prison officials did not act with deliberate indifference to Long's gender-identity disorder, we need not and do not address his arguments regarding the prison officials' entitlement to qualified immunity.

199, 200 (8th Cir. 1996) (per curiam); <u>see</u> <u>also</u> <u>Ornelas v. United States</u>, No. 95-5257, 1996 WL 276414 at *6 (U.S. May 28, 1996) (historical facts reviewed "only for clear error" but legal conclusions such as "reasonable suspicion" and "probable cause" reviewed de novo).  After reviewing the trial transcript and the documentary evidence, we conclude that the relevant factual findings of the District Court, as outlined above, are not clearly erroneous.

B.

Turning to the merits of Long's legal arguments, we conclude that he failed to prove that the prison officials acted with deliberate indifference.  Deliberate indifference to the serious medical needs of a prisoner constitutes cruel and unusual punishment, <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-03 (1976), and the Constitution prohibits state governments from inflicting such punishments, <u>Louisiana ex rel. Francis v. Resweber</u>, 329 U.S. 459, 463 (1947) (stating that Due Process Clause of Fourteenth Amendment incorporates Eighth Amendment's guarantee against cruel and unusual punishment).  We assume without deciding that Long's gender-identity disorder constitutes a serious medical need for the purposes of this case.[3]

"A prison official exhibits deliberate indifference when the official actually `knows of and disregards' a prisoner's serious medical needs." <u>Boyd v. Knox</u>, 47 F.3d 966, 968 (8th Cir. 1995) (quoting <u>Farmer v. Brennan</u>, 114 S. Ct. 1970, 1977, 1979 (1994)).

---

[3]A psychological disorder may constitute a serious medical need.  <u>White v. Farrier</u>, 849 F.2d 322, 325 (8th Cir. 1988).  We have held that transsexualism is a serious medical need, <u>id.</u>, though that holding may be in doubt in light of <u>Farmer v. Brennan</u>, 114 S. Ct. 1970 (1994), and subsequent cases.  It is undisputed in this case, however, that Long is not a transsexual, and thus <u>White</u> does not control the resolution of whether Long's gender-identity disorder is a serious medical need.

Thus, the failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge.  Moreover, nothing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment.  White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988).  Prisoners do not have a constitutional right to any particular type of treatment.  See id. at 327-28.  Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.  Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994); Taylor v. Turner, 884 F.2d 1088, 1090 (8th Cir. 1989).

The record indicates that Dr. Loeffelholz and other members of the prison medical staff were aware of Long's psychological problems.  The record, however, does not show any deliberate indifference on the part of the prison officials.  Long's expert in this case, Dr. Bockting, recommended an initial course of treatment that consisted of psychotherapy and tranquilizers.  Dr. Loeffelholz did not reject psychotherapy, only the use of tranquilizers.  In fact, the record is full of evidence of the attempts of the prison medical staff to evaluate Long's psychological problems and Long's refusal to cooperate.  In these circumstances, Long has failed to prove that Dr. Loeffelholz[4] was deliberately indifferent to Long's gender-identity disorder, the only serious medical need alleged in this case.[5]

_____

[4]We also agree with the District Court's conclusion, Long, 877 F. Supp. at 1366, that the other defendants were entitled to rely on the opinions of the medical staff when refusing Long's requests to cross-dress.  See Heidemann v. Rother, Nos. 94-4112 & 95-1136, slip op. at 11-12 (8th Cir. May 23, 1996).

[5]In his Reply Brief, Long alleges that his anxiety and depression constitute independent serious medical needs and that cross-dressing is the appropriate treatment for these conditions.  Reply Brief at 7.  This argument is not properly before us, having been raised for the first time in Long's Reply Brief.  See United States v. Darden, 70 F.3d 1507, 1549 n.18 (8th Cir. 1995), cert. denied, 116 S. Ct. 1449 (1996).  The only serious psychological need referred to in Long's amended complaint, and the alleged

To the extent that Long's claim is based on the prison officials' failure to provide tranquilizers, it fails because it is merely a dispute over the course of treatment. The prison officials' decision not to treat Long with tranquilizers is "a classic example of a matter for medical judgment" that does not rise to the level of cruel and unusual punishment. See Gamble, 429 U.S. at 107. To the extent that Long's claim is based on the prison officials' failure to provide psychotherapy, it fails because Long consistently has refused psychological help. It is perhaps possible that Long would benefit from some form of therapy. Long, however, has resisted the attempts of Iowa prison officials to provide psychological evaluation, treatment, and therapy over the past twenty years. Even Dr. Bockting noted that "Long's profile may be `highly resistant to psychological treatment.'" Long, 877 F. Supp. at 1362. We reject Long's contention that the Eighth Amendment requires the Iowa Department of Corrections to provide Long with a "sensitive" psychotherapist trained in gender-identity issues. Appellant's Brief at 14, 15. The record shows that the ISP medical staff is competent to diagnose inmates' medical problems and to order treatment or further evaluation by other medical professionals.[6]

The District Court correctly stated that "[i]n essence, Long demands the privilege of cross dressing so that he can exist in the prison on his own terms, rather than in conformity with prison regulations." Long, 877 F. Supp. at 1366. Having no apparent

---

serious medical need on which the case was tried, is his gender-identity disorder.

[6]ISP employs three full-time psychologists. The psychologists may refer a prisoner to the prison system's 46-bed licensed psychiatric hospital or to outside facilities and specialists for further evaluation and treatment.

interest in overcoming his gender-identity disorder, Long has frustrated the attempts of prison doctors to treat that disorder by his consistent refusal of psychological evaluation over the past twenty years. In these circumstances, the District Court unquestionably was correct when it held that Long failed to prove that the defendant prison officials have been deliberately indifferent to his gender-identity disorder.

III.

For the reasons stated above, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.